**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Stollenwerk and Andrea DeGatica, husband and wife; Mark William Brandt; et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>Tri-West Healthcare Alliance,<br><br>        Defendant. | No. CIV 03-0185-PHX-SRB<br><br>**OPINION AND ORDER** |

    This matter arises out of the burglary of Defendant TriWest Healthcare Alliance's ("Triwest") corporate office on December 14, 2002.  During this burglary, computer hard drives containing the personal information of Plaintiffs Michael Stollenwerk, Andrea DeGatica, and Mark Brandt were stolen, leading Plaintiffs to file a class action lawsuit alleging negligence under Arizona law as well as other violations that have since been dismissed by this Court.  Pursuant to Fed. R. Civ. P. 56, Defendant now seeks summary judgment on the remaining negligence claim (Doc. 77).

**I.    BACKGROUND**

    Defendant TriWest, a contractor and agent of the federal government, manages the local region of the U.S. Department of Defense's health insurance program and, as a result, possessed the personal information, including names, addresses, birth dates, and social security numbers, of the beneficiaries of that program.  Plaintiffs, current and former

1   members of the U.S. military and their dependents, are several such beneficiaries whose data

2   was stored in computerized and hard copy form at Defendant's facility in Phoenix, Arizona.

3       In May 2001, Defendant experienced a security breach wherein unauthorized

4   personnel entered the Phoenix facility.  Defendant reported the incident to the Phoenix Police

5   Department, but Plaintiffs allege that no other action was taken to ensure the security of the

6   facility despite its apparent vulnerabilities.  On December 14, 2002, unidentified individuals

7   again breached security and proceeded to burglarize the Phoenix facility, removing computer

8   hard   drives   containing   Plaintiffs'   personal   information   and   other   items.

9       Beginning on January 28, 2003, Plaintiff Brandt's personal data was used on six

10  occasions to open or to attempt to open unauthorized credit accounts in Plaintiff Brandt's

11  name.  Unknown individuals successfully opened at least two credit accounts and generated

12  more than $7,000 in unauthorized charges to these accounts.  Plaintiffs Stollenwerk and

13  DeGatica allege a different form of injury; following the theft of their data, both have

14  obtained both credit monitoring services and identity theft insurance.

15      On January 28, 2003, Plaintiffs Stollenwerk and DeGatica filed their original

16  complaint in this action, alleging violations of the Privacy Act, the Ninth Amendment, and

17  Arizona tort and contract law.[1]  Plaintiff Brandt later joined the lawsuit and Plaintiffs filed

18  and served their First Amended Complaint in May 2003.  The First Amended Complaint

19  asserted claims for negligence, "gross negligence," "negligence per se," "res ipsa loquitur,"

20  breach of the implied bailment contract, and violations of the Privacy Act, the Ninth

21  Amendment, and the Arizona Consumer Fraud Act.  Defendant moved to dismiss the First

22  Amended Complaint pursuant to Rule 12(b)(6), and at oral argument of the motion on

23  October 20, 2003, the Court granted the motion to dismiss with leave to amend the

24  Complaint as to only the negligence, Arizona Consumer Fraud Act, and Privacy Act claims.

25      Plaintiffs filed their Second Amended Complaint on October 30, 2003.  The Second

26  Amended Complaint alleged two counts of Privacy Act violations, one count of negligence,

27  _____

28  [1]The original complaint was never served on Defendant.

1   one count of consumer fraud under the Arizona Consumer Fraud Act, and one count of

2   breach of a contract intended to benefit Plaintiffs.  On September 30, 2004, this Court

3   granted Defendant's second motion to dismiss as to all counts but the negligence claim.

4   Defendant now moves for summary judgment on the remaining negligence claim pursuant

5   to Rule 56 of the Federal Rules of Civil Procedure.  The Court heard argument on

6   Defendant's motion on June 6, 2005.

7   **II.     LEGAL STANDARDS AND ANALYSIS**

8           The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of

9   Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no

10  genuine issues of material fact remain; and (2) after viewing the evidence most favorably to

11  the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R.

12  Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986);

13  *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987).

14          In considering a motion for summary judgment, the Court must regard as true the non-

15  moving party's evidence if it is supported by affidavits or other evidentiary material.

16  *Celotex,* 477 U.S. at 324, 106 S. Ct. at 2548; *Eisenberg,* 815 F.2d at 1289.  However, the

17  non-moving party may not merely rest on its pleadings, he must produce some significant

18  probative evidence tending to contradict the moving party's allegations, thereby creating a

19  material question of fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S. Ct.

20  2505, 2513-14 (1986) (holding that the plaintiff must present affirmative evidence in order

21  to defeat a properly supported motion for summary judgment); *First Nat'l Bank v. Cities*

22  *Serv. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968).

23          Defendant argues that summary judgment is appropriate because Plaintiffs

24  Stollenwerk and DeGatica have not come forward with evidence legally sufficient to show

25  that they incurred injury and because Plaintiff Brandt has not provided significant probative

26  evidence of a causal connection between the theft of his personal information from

27  Defendant and the fraudulent use of his personal information.  Plaintiffs dispute these

28  contentions.

**A.      Plaintiffs Stollenwerk and DeGatica**

Plaintiffs Stollenwerk and DeGatica maintain that the exposure of their sensitive personal information at the hands of Defendant necessitated the purchase of credit-monitoring services and that the cost of these services constitutes injury within the meaning of the law.  In its Order of September 30, 2004, this Court found, for the purposes of deciding a motion to dismiss, that "an exposure of personal information likely to result in the unauthorized use of one's identity is sufficiently similar [to exposure to toxic chemicals or asbestos likely to result in disease] so as to justify the maintenance of a cause of action for recovery of the cost of credit monitoring services."  (Sept. 30, 2004 Order at 8.)  Plaintiffs contend that the Court is prevented from revisiting this position under the law of the case doctrine, and that even if the Court were to readdress its prior finding, caselaw concerning latent injury would require the Court to reach the identical conclusion.

Generally, the law of the case doctrine precludes a court "from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  Where a district court has never relinquished jurisdiction over a case, however, the law of the case doctrine is inapplicable and the Court is free to revisit its earlier decisions.  *United States v. Smith*, 389 F.3d 944, 948-49 (9th Cir. 2004).  Because the Court never entered judgment in this matter nor otherwise relinquished jurisdiction over the case, the law of the case doctrine is "wholly inapposite," *id.*, (quoting *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001)), and the Court is free to revisit its determinations made within the context of a motion to dismiss.

With the intent of permitting the parties to explore fully the issue of credit monitoring as adequate injury in a negligence action, in deciding Defendant's Motion to Dismiss the Court found itself unable to say that a cause of action could never be maintained on such a basis.  Having more fully considered the issue upon further briefing by the parties and after Plaintiffs had the opportunity to obtain discovery, the Court finds that summary judgment in Defendant's favor nevertheless is appropriate as to the negligence claims of Plaintiffs

- 4 -

1   Stollenwerk and DeGatica.  Defendant argues that credit monitoring costs should not be

2   viewed as injury sufficient to establish the tort of negligence for several reasons: (1)  unlike

3   toxic tort or products liability cases, cases involving the exposure of sensitive personal

4   information do not involve a latent injury at the time of exposure – the only injury occurs at

5   the time the information is misused; (2) the interest in preserving public health, which merits

6   awards for medical monitoring, does not exist with respect to claims for credit monitoring;

7   and  (3) any injury resulting from identity theft can be compensated with monetary damages

8   after the fact, eliminating the need for preventive monitoring.  Defendant further argues that

9   credit monitoring should not suffice as injury in this case, even if it might be adequate in

10  other instances.

11          The Court is not convinced that the negligent exposure of confidential personal

12  information is entirely dissimilar from negligent exposure to toxic substances or unsafe

13  products.  In both circumstances the individual may manifest more obvious injury, such as

14  identity fraud or disease, after some period of time, and in neither instance is the later

15  manifestation of patent injury guaranteed, although the certainty with which such a

16  development may be anticipated may be greater for toxic torts.  It is unnecessary for the

17  Court to determine whether the timing and manifestation of the injuries are sufficiently

18  analogous where credit monitoring and medical monitoring are sought, however, as another

19  reason for granting summary judgment in Defendant's favor is apparent.

20          The Court must acknowledge the important distinction between toxic tort and products

21  liability cases, which necessarily and directly involve human health and safety, and credit

22  monitoring cases, which do not.  Arizona recognizes the importance of preserving public

23  health and "'fostering access to medical testing for individuals whose exposure to toxic

24  chemicals creates an enhanced risk of disease.  The value of early diagnosis and treatment

25  for cancer patients is well documented.'" *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 33

26  (Ariz. Ct. App. 1988), *quoting Ayers v. Township of Jackson*, 525 A.2d 287, 311 (N.J. 1987).

27

28                                        - 5 -

1   It is, in large part, this public health interest that justifies departure from the general rule that

2   enhanced future risk of injury cannot form the sole basis for a negligence action.  *See Amfac*

3   *Distrib. Corp. v. Miller*, 673 P.2d 792, 793-94 (Ariz. 1983) (requiring actual injury to sustain

4   cause of action in negligence); *Commercial Union Ins. Co. v. Lewis & Roca*, 902 P.2d 1354,

5   1358 (Ariz. Ct. App. 1995) (noting that a threat of future harm is insufficient).

6   Notwithstanding the intimation in *Doe v. Chao*, 540 U.S. 614, 626 n.10, 124 S.Ct. 1204,

7   1211 n.10 (2004), that "fees associated with running a credit report" might qualify as actual

8   damages in the context of an action under the Privacy Act, the Court has been unable to

9   identify a single instance where damages for the cost of monitoring were awarded absent

10   increased risk of injury to human health or well-being.  Although a victim of identity theft

11   and/or fraud, like the victims in other negligence actions where present actual injury is

12   required, may experience nonmonetary harm, the primary injury does not present a serious

13   health risk.  Thus, despite findings that identity theft results in more than purely pecuniary

14   damages, including psychological or emotional distress, inconvenience, and harm to his

15   credit rating or reputation, *see United States v. Williams*, 355 F.3d 893, 898 (6th Cir. 2003);

16   *United States v. Karro*, 257 F.3d 112, 121 (2d Cir. 2001), as a matter of law identity theft and

17   credit monitoring must still be differentiated from toxic torts and medical monitoring.

18   Defendants also maintain that even if credit monitoring costs were sufficient injury

19   to state a cause of action for negligence in some circumstances, the evidence here is

20   inadequate to maintain such an action.  In medical monitoring cases, a plaintiff must meet

21   several criteria before recovery is permitted.  Proof must be offered to satisfy at least the

22   following elements: (1) significant exposure to a toxic substance; (2) a significantly increased

23   likelihood of developing a serious disease as a proximate result of exposure; (3) the

24   reasonable necessity of periodic diagnostic testing; and (4) the existence of monitoring and

25   testing procedures that facilitate the early detection and treatment of disease.  *See Burns,* 752

26   P.2d at 33, *quoting Ayers*, 525 A.2d at 312; *Miranda v. Shell Oil Co.*, 17 Cal. App. 4th 1651,

27

28

- 6 -

1    1657-58 (Cal. Ct. App. 1993), *quoting Ayers*, 525 A.2d at 312; *see also DeStories v. City of*

2    *Phoenix*, 744 P.2d 705, 711 (Ariz. Ct. App. 1987) (implicitly requiring proof that the

3    "frequency, cost or intensity of plaintiffs' need for periodic medical examinations [exceeded]

4    what would normally have been prudent for them"); *In re Marine Asbestos Cases,* 265 F.3d

5    861, 866 (9th Cir. 2001), *citing In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 852 (3d

6    Cir. 1990).  Applying these factors to identity theft cases, a plaintiff would be required to

7    establish, at a minimum:  (1) significant exposure of sensitive personal information; (2) a

8    significantly increased risk of identity fraud as a result of that exposure; and (3) the necessity

9    and effectiveness of credit monitoring in detecting, treating, and/or preventing identity fraud.

10          Defendant challenges Plaintiffs' ability to establish these criteria, and the Court agrees

11    that Plaintiffs are unable to provide evidence sufficient to prevent summary judgment in

12    Defendant's favor.   Plaintiffs have not brought forward evidence that the personal

13    information on the stolen computers was ever exposed to the thieves involved.  Unlike a case

14    involving pure data theft, there is nothing in the record here to suggest that the data, rather

15    than the hardware on which the data was stored, formed the thieves' target.  Absent evidence

16    that the data was targeted or actually accessed, there is no basis for a reasonable jury to

17    determine   that   sensitive   personal   information   was   significantly   exposed.

18          Furthermore, the affidavit of Plaintiffs' expert conclusorily posits that Plaintiffs' risk

19    of identity fraud is significantly increased without quantifying this risk.[2]   Defining

20    "significant" for the purpose of awarding credit monitoring is a matter of law for the Court,

21    however, and mere allegations that an increase is significant do not constitute evidence.[3]

22    _____

23    [2]Plaintiffs' expert opines that Plaintiffs are at an increased risk of experiencing identity
       fraud for the next seven years, but fails to indicate the mathematical degree to which
24    the risk is increased  despite stating that his conclusions were arrived at as a matter
       of scientific probability.
25

26    [3]Defendant also argues that summary judgment is appropriate because Plaintiffs were
       aware of the risk of identity fraud, yet failed to utilize free measures for reducing this
27

28

1    Similarly, although Plaintiff's expert opines that credit monitoring will "substantially" reduce

2    the risk of identity fraud, he fails to quantify the reduction of risk in objective terms.

3    Because the Court finds that there is no evidence in the record before it that Plaintiffs'

4    personal information itself endured significant exposure, that Plaintiffs' risk of identity fraud

5    is significantly increased, or that credit monitoring will reduce the risk of identity fraud to

6    the necessary degree, Defendant's motion for summary judgment must be granted as to this

7    case even if credit monitoring were available in other circumstances.

8    **B.    Plaintiff Brandt**

9        Defendant also seeks summary judgment as to the negligence claims of Plaintiff

10   Brandt.  Although Plaintiff Brandt's personal information was used to open or attempt to

11   open unauthorized credit accounts in his name at various retailers, Defendant disputes

12   Plaintiff Brandt's  contention that these incidents of identity fraud can be causally connected

13   to the burglary of Defendant's facility.

14       In order to maintain a cause of action for negligence, a plaintiff must prove causation;

15   that is, that the defendant's act or omission, "in a natural and continuous sequence, unbroken

16   by any efficient intervening cause, produce[d] an injury, and without which the injury would

17   not have occurred." *Roberston v. Sixpence Inns of Am.*, 789 P.2d 1040, 1047 (Ariz. 1990).

18   "[W]hen damage may have resulted from one of several causes, and . . . it is as probable that

19   it may have been a cause for which defendant was not responsible as one for which it was,

20   a plaintiff may not recover." *Salt River Valley Water Users' Ass'n v. Blake*, 90 P.2d 1004,

21   1007 (Ariz. 1939); *see also Butler v. Wong*, 573 P.2d 86, 87 (Ariz. Ct. App. 1977) ("It is not

22   sufficient in an action for damages that plaintiff show a certain injury might have been

23   

24   risk and did not obtain credit monitoring insurance until nearly a year after learning

25   of the burglary. These facts are relevant only to demonstrating that any increased risk
     of fraud may not be solely attributable to Defendant's behavior and must be taken into

26   account by experts when determining the portion of the increased risk attributable to

27   Defendant.

28                                    - 8 -

caused by the negligence of defendant.  It is necessary to establish that the injuries have been
so caused.").  A plaintiff must show that causation by the defendant's act or omission is
reasonably likely, not merely possible.  *See Purcell v. Zimbelman*, 500 P.2d 335, 342 (Ariz.
Ct. App. 1972).

In the summary judgment context, a plaintiff must provide evidence from which a
reasonable jury could conclude that Plaintiff Brandt's injuries were the result of the burglary
rather than other causes.  *See Taft v. Ball, Ball & Brosamer, Inc.,* 818 P.2d 158, 162 (Ariz.
Ct. App. 1991).  This evidence may be either direct or circumstantial.  *Mason v. Ariz. Public
Serv. Co.*, 622 P.2d 493, 500 (Ariz. Ct. App. 1980); *see also Robertson*, 789 P.2d at 1047
("Plaintiff need only present probable facts from which the causal relationship reasonably
may be inferred."); *cf. Clausen v. M/V New Carissa*, 339 F.3d 1049, 1059 (9th Cir. 2003).
Where evidence is circumstantial, it must permit a jury to draw reasonable inferences, not
merely speculate or conjecture.  *Sunward Corp v. Dun & Bradstreet, Inc*., 811 F.2d 511, 521
(10th Cir. 1987); *Dreijer v. Girod Motor Co.*, 294 F.2d 549, 554 (5th Cir. 1961).

Plaintiff Brandt's evidence primarily consists of information about six occasions after
the burglary on which an unknown person(s) successfully or unsuccessfully attempted to
open credit accounts in his name.  The first of these incidents occurred on January 28, 2003,
when an unidentified individual attempted to open a Home Depot account in his name.
Additional incidents occurred on March 20, 2003 (an account opened via Citifinancial Retail
Services at Rex Electronics in Uniontown, Pennsylvania), on March 31, 2003 (an account
opened with T-Mobile Cellular in Youngstown, Ohio, an account opened with Sears in
Youngstown, Ohio, and an attempted account opening with Kaufmann's in West Virginia)
and in Spring 2003 (an attempted account opening via GE Credit Services at Walmart).  The
account with Rex Electronics allegedly was opened using a false address in Dover, Delaware,
a city where Plaintiff Brandt was stationed while serving in the Air Force.  Plaintiff Brandt
also offers his own statements that he has never transmitted his personal information over the

- 9 -

internet and shreds all mail he receives in relation to credit applications, approvals, and pre-approvals, but admits that he provided his sensitive personal information to individuals or organizations other than Defendant.

The Court notes Defendant's objections to Plaintiff Brandt's evidence as inadmissible hearsay drawn from conversations between Plaintiff Brandt and the involved businesses. Although the mere occurrence of unauthorized transactions is within Plaintiff Brandt's personal knowledge, any additional information about the circumstances surrounding these transactions is outside his personal knowledge and therefore hearsay inadmissible to prove the truth of the matter asserted. Fed. R. Evid. 602. Thus, Plaintiff Brandt's evidence that the Rex Electronics credit account was opened using a Dover, Delaware address, or any other evidence about the information used in these fraudulent acts, is inadmissible because it is only what he was told by others. Inadmissible evidence cannot create a genuine issue of material fact. *Urbina v. Gilfilen*, 411 F.2d 546, 547-58 (9th Cir. 1969).

Absent evidence that the Rex Electronics account was opened using an address similar to one of Plaintiff Brandt's addresses listed among the information contained on the equipment stolen from Defendant, the only evidence before the Court is that Plaintiff's information was used to fraudulently open or attempt to open accounts beginning approximately six weeks after the burglary of Defendant's facility. Although "a temporal relationship between exposure to a substance and the onset of a disease . . . can provide compelling evidence of causation," *Clausen*, 339 F.3d at 1059, *quoting Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999), it is not dispositive of the causation issue. To the contrary, to determine that one event caused another merely because the first preceded the second is a classic example of *post hoc ergo propter hoc* ("after this, therefore because of this"), a logical fallacy. *See Choe v. Immigration & Naturalization Serv.,* 11 F.3d 925, 938 (9th Cir. 1993); *Sunward Corp.*, 811 F.2d at 521 n.8; *Dreijer*, 294 F.2d at 555. Standing alone, Plaintiff Brandt's evidence that the burglary preceded the incidents of

- 10 -

1  identity fraud does not allow a reasonable jury to infer that the burglary caused the incidents

2  of identity fraud.  Such a conclusion would be the result of speculation and conjecture, not

3  a reasonable inference.  *See Sunward Corp.*, 811 F.2d at 521 n.8 (citing cases that held that

4  *post hoc ergo propter hoc* equates to speculation and conjecture, not reasonable inference).

5        Although the Court has determined that Plaintiff Brandt's evidence concerning the

6  type of information used in opening the unauthorized accounts is inadmissible, in the interest

7  of fully resolving the matter the Court will also discuss the impact of this evidence in the

8  event that it could be offered in a form that would comply with the Federal Rules of

9  Evidence.  In short, it has no effect on Defendant's entitlement to summary judgment.

10  Plaintiff Brandt's Dover, Delaware address and other information, including his social

11  security number, was disclosed to others on multiple occasions.  The mere use of such

12  information in the course of acts of identity fraud, therefore, does not permit a finder of fact

13  to draw the reasonable inference that the unidentified identity thieves obtained it from

14  Defendant.  Summary judgment is appropriate regardless of the admissibility of Plaintiff

15  Brandt's evidence concerning information used by the identity fraud perpetrators.

16        **IT IS ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 77).

17        **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in

18  favor of Defendant and dismissing Plaintiffs' claims.

19

20                 DATED this 6th day of September, 2005.

21

22

23  _____
                            Susan R. Bolton
24                    United States District Judge

25

26

27

28

- 11 -