**BELLOVIN & KARNAS, P.C.**
ATTORNEYS AT LAW
**131 East Broadway**
**Tucson, Arizona 85701**
**Phone: 520-571-9700**

M. David Karnas, Esq. (SBN 013728)
Barry L. Bellovin, Esq. (SBN 009021)
Counsel for All Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **MICHAEL STOLLENWERK** and **ANDREA DE GATICA,** husband and wife; **MARK WILLIAM BRANDT; et al;**<br><br>Plaintiffs,<br><br>vs.<br><br>**TRI-WEST HEALTHCARE ALLIANCE**<br><br>Defendants. | **NO. CIV03 0185 PHX SRB**<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**(Oral Argument Requested)** |

Plaintiff, through counsel undersigned, hereby moves to certify this case as a class action

pursuant to Rules 23 (a), 23(b)(3) and 23(c)(4)(A) of the Federal Rules of Civil Procedure.

Furthermore, Plaintiffs request that class counsel be appointed pursuant to Rule 23(g). This

motion is supported by the following Memorandum of Points and Authorities, the Second

Amended Complaint, the attached declaration of Plaintiff Mark William Brandt, and the declarations of counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>BRIEF STATEMENT OF RELEVANT FACTS.</u>

This action arises from Defendant's failure to protect the personal information of over 500,000 men and women who have served this country in the United States Military. The Plaintiff and the putative class are former and current members of the United States military and their dependents. As members of the military, they are entitled to participate in a health care program. Defendant TriWest manages the health care program. In the course of managing the military's health care program, Defendant collected and still collects from the Plaintiff and the putative class, personal confidential information. This information includes names, addresses, social security numbers and dates of birth. Defendant catalogs the personal confidential information on computer equipment stored at its facility in Phoenix, Arizona.   Defendant represented and still represents that their facility and computer equipment have adequate physical and technical safe guards.

In May 2001, unauthorized persons entered TriWest's Phoenix facility. Defendant knew that unauthorized person(s) perpetrated the existing security features at TriWest but did

nothing to prevent any future security breaches except to file a burglary complaint with the Phoenix Police Department.

On or about December 14, 2002, unauthorized persons again entered the TriWest Phoenix facility. This time, computer equipment from the TriWest facility was removed including a computer containing Plaintiff Brandt's and the putative Class Members' personal confidential information such as their names, addresses, social security numbers and dates of birth.

On January 28, 2003 an unauthorized person applied for and opened credit accounts and incurred substantial charges in the name of Plaintiff Mark William Brandt. Subsequently, a series of instances occurred where credit accounts were either opened or attempted to be opened in the name of Plaintiff Mark William Brandt. Consequently, Plaintiff Brandt's credit was damaged and he incurred costs associated with correcting the damage that was done to his name and reputation. Consequently, Plaintiff Brandt initiated this class action lawsuit on behalf of himself and all similarly situated persons whose personal information was made available for the taking by Defendant Triwest.

## II. CLASS CERTIFICATION.

### Introduction

Class actions are favored as an effective means of adjudicating numerous similar claims involving large numbers of people.[1]  In appropriate cases, class actions provide benefits to both claiming and defending parties and serve as a practical tool for resolving multiple claims on a consistent basis at the least cost and with the least disruption to an overloaded judicial system.[2] As the United States Supreme Court has observed, "[c]lass actions serve an important function in our system of civil justice."[3]

Because of the extraordinarily high costs that plaintiffs can be expected to incur in a case of this difficulty, many claims are not viable absent the class mechanism provided in Rule 23. Where a single harmful act, such as an accidental  release of personal information, may result in damages to a great many people, the class action is the appropriate procedural device for vindicating claims which, if taken individually, are too small to justify legal action, but which are of significant size if taken as a group.[4]

---

[1]  *Kahan v. Rosenstiel*, 424 F.2d 161 (3rd Cir. 1970), *cert denied,* 398 U.S. 950 (1970).

[2]  *Andrew S. Arena, Inc. v. Superior Court*, 163 Ariz. 423, 425, 788 P.2d 1174, 1176 (1990).

[3]  *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 (1981).

[4]  Escott v. Barchris Contr. Co., 340 F.2d 731 (2d Cir. 1965), *cert denied*, 382 U.S. 816 (1965).

Furthermore, denial of class certification would ensure defendants a windfall by relieving them of responsibility for the harms suffered by plaintiffs who cannot finance this type of litigation. A rejection of class certification would not only deny just compensation, but it would also defeat the purpose of civil liability in "serv[ing] as an effective deterrent to wrongdoing."[5] Therefore, the laudable public policy goals of class certification—efficiency and economy of litigation, avoidance of the inequality resulting from piecemeal litigation, and the need to provide access to the courts for litigants with limited resources and common claims—as embodied in Rule 23, are served by certifying this case as a class action.

## Standard of Review

In the class certification context, it is well settled that the factual allegations in the Complaint are accepted as true. Thus:

> in reviewing a motion for class certification, the court accepts as true the complaint's substantive allegations. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975); *see also Brink v. First Credit Res.*, 185 F.R.D. 567 (D. Ariz. 1999). The plaintiff carries the initial burden of establishing facts sufficient to warrant certification. (Citations omitted). This may be done by allegations in a well-pleaded complaint. (Citations omitted).

*Price v. Surety Acceptance Corp.*, 1999 U.S. Dist. LEXIS 22418 at *6 (D. Ariz. 1999).

The U.S. Supreme Court has held that nothing in either the language or history of Rule 23 requires a court to conduct a preliminary inquiry into the merits of a suit in order to

---

[5] Miller, *Problems in Administering Judicial Relief in Class Actions Under Federal Rule 23(b)(3)*, 54 F.R.D. 501, 513 (1971). "It is the duty of the . . . courts to render private enforcement practicable." Dolgow v. Anderson, 43 F.R.D. 472, 484 (E.D.N.Y. 1968).

determine whether it may be maintained as a class action.  Indeed, such a procedure contravenes the rule.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *see also, e.g.*, 7A Wright & Miller, *Federal Practice and Procedure* § 1759 at 99 (2d ed. 1986) ("[A]n inquiry into the merits of the claims of the representative or the class is inappropriate when making the decision whether the action should be certified under Rule 23.").

It is equally well settled that any doubts concerning whether to certify a class action should be resolved in favor of certification.

> because the class action rule itself requires that the court make a class determination "as soon as practicable," and permits the court to alter or amend its order before the decision on the merits, many presumptions are fairly invoked to aid the court in reaching an early determination.
> Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class.

2 H. Newberg and A. Conti, *Newberg on Class Actions*, § 7.17 at 7-62, 63 (3d ed. 1992).

## Class Definition

Pursuant to Rule 23(c)(1)(a), an order certifying a class action must define the class and class claims. Accordingly, in this matter, the class representative Plaintiff, Mark William Brandt seeks to certify a class defined as follows:

> All of Defendant's customers, (current and former members of the United States Military), whose personal information was stored on computer equipment that was accessed by unauthorized persons at Defendant's facility on or about December 14, 2002 who claim damage as a result thereof.

The class definition is sufficiently specific so that class members can be easily identified. Indeed, when the security breach occurred, defendant itself was able to identify all the victims and send them notices that their personal information came into the possession of unauthorized persons. Additionally, the Class definition may be subject to adjustment based on facts discerned during the merits discovery process which is not yet underway.

## Argument to Certify a Class

Rule 23 F.R.C.P. governs the maintenance of class actions. Subsection (a) sets forth four prerequisites for all class actions:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> **(1)** the class is so numerous that joinder of all members is impracticable;
> **(2)** there are questions of law or fact common to the class;
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

**(4)** the representative parties will fairly and adequately protect the interests of the class.

These prerequisites are known by their common one-word denominations as: numerosity, commonality, typicality, and adequacy.   A class action may be maintained if all four of the prerequisites set forth above are satisfied, in addition to one of the prerequisites contained in Subsection (b).[6] Here, Plaintiffs contend that a class should be certified under Subsection (b)(3):

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

...

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
**(D)** the likely difficulties in managing a class action.

The Subsection (b)(3) requirements are known by their common one-word denominations as: predominance and superiority.

In this case, it is clear that all of the requirements of Subsections (a) and (b)(3) have been met, and that common issues should be certified under Rule 23(c)(4)(A).  Each requirement will be discussed in turn below.

---

[6] Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 423 (4th Cir. 2003); Lienhart v. Dryvit Systems, Incorporated, 255 F.3d 138, 146 (4th Cir. 2001).

-8-

**NUMEROSITY:**

In order to meet the numerosity criterion, there must be a large enough group of plaintiffs to make joinder of all class members impracticable. Professor Newberg states: "*Impracticable does not mean impossible.* Plaintiffs need not show that joinder cannot be accomplished; a showing of strong litigational hardship or inconvenience should be sufficient."[7] "In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."[8] Here, there are potentially thousands of putative class members and the numerosity requirement is easily met.

**COMMONALITY:**

The question of commonality asks whether there are legal and factual issues common to the class, that when decided, will be binding on the entire class. As to this requirement, Professor Newberg writes:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. Therefore, this requirement is easily met in most cases. When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of

---

[7] Newberg on Class Actions, Fourth Ed., §3:4.

[8] *Id*, §3:5.

action, one or more of the elements of that cause of action will be common to all
of the persons affected.[9]

Courts have held that "commonality" exists under manifold circumstances. Generally, there are

common questions if the claims of the class arise from the same wrongful acts or underlying

set of acts or circumstances.

Plaintiffs have asserted several causes of action against the various defendants, all of

which raise legal and factual issues that are common to the entire class: (1) the Defendant's

duty; (2) Defendant's breach of duty, (3) whether defendants' negligence caused harm; and (4)

liability for and quantification of punitive damages.

In a Rule 23(b)(3) class action, such as this case, the commonality requirement is

"subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions

common to the class predominate over" other questions.[10]   Therefore, further attention to the

commonality issue will be reserved for the discussion of predominance issues, below.

**TYPICALITY:**

The typicality prerequisite assures that the class representative shares the issues
common to other class members.  Thus, to some extent, it overlaps with the Rule
23(a)(2) requirement that there be questions of law or fact common to the class,
except that each test proceeds from a different perspective.   The typicality

---

[9] Newberg, *supra*, § 3:10.

[10] Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689
(1997);

-10-

criterion focuses on whether there exists a relationship between the plaintiff's claim and the claims alleged on behalf of the class.[11]

Typicality is closely tied to adequacy of representation in that, if the claims of the class representatives are aligned with that of the class, the vigorous prosecution of their claims will necessarily inure to the benefit of the class. Professor Newberg writes:

> The Supreme Court in <u>General Telephone v. E.E.O.C.</u>[12] observed: "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation, and in so doing, will advance the interests of the class members, which are aligned with those of the representative.[13]

At the same time, however, "Rule 23 does not require precise, mirror-image identity respecting the injuries caused by a single practice or policy . . . ."[14]   The Ninth Circuit put it more succinctly when it wrote: "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'"[15]

---

[11] Newberg, *supra*, § 3:13.

[12] <u>General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission</u>, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

[13] Newberg, *supra*, § 3:13.

[14] <u>Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.</u>, 659 F.2d 1259, 1270 (4th Cir. 1981).

[15] <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992)

-11-

The affidavit of the named plaintiff, coupled with the allegations of the complaint, clearly indicate that the typicality test is met. (See, Affidavit of Plaintiff Brandt attached hereto as exhibit 1). The Plaintiff's personal information was on the same computer as 500,000 other current and former military members. The Defendant's conduct in failing to protect Plaintiff's information applies to all 500,000 people whose information was on the same computer. The action is based on defendants' conduct, involving the same legal theories as apply to the whole class. All other class members suffered the same fate as the named class representative. "A claim is typical if it arises from the same course of conduct that gives rise to the claims of the class members and if the claims are based on the same legal theories."[16]

**ADEQUACY OF REPRESENTATION:**

Under Rule 23(a)(4) the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To fulfill the requirement, two factors must be satisfied: (1) the attorneys representing the Class must be qualified and competent; and (2) the Class representatives do not have interests antagonistic toward the other class members. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *see also In re N.Dist. Of Cal., Dalkon Shield Litigation*, 693 F.2d 847, 855 (9th Cir. 1982). The burden is on the defendants to demonstrate that

---

[16] <u>Central Wesleyan College v. W.R. Grace & Co.</u>, 143 F.R.D. 628, 637 ((D.S.C. 1992), affm'd 6 F.3d 177 (4th Cir. 1993), quoting Newberg, *supra*, § 3:13

representation would be inadequate. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986), *reh'g denied, en banc,* 785 F.2d 1034 (5th Cir. 1986).

Here, Plaintiff Brandt and his counsel meet the adequacy requirements. The attached affidavits from Plaintiff's counsel demonstrate that the attorneys' skills, experience and resources qualify them to represent the Class. *See Exhibits 2 and 3* . Furthermore, Plaintiff Brandt is an adequate class representative plaintiff. *See Exhibit 1 , affidavit of Mark William Brandt.* In analyzing this criteria, the Court should determine whether Plaintiff Brandt's individual interests are similar to those of the Class members. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S. Ct 2364 (1982). In this case, Plaintiff Brandt was victimized by the same single set of negligent acts as every other class member. Plaintiff Brandt has also been harmed as a result of Defendant's negligent acts, and his pursuit of damages will advance the claims of the class members who are all similarly situated. Plaintiff Brandt's claims are not antagonistic or inconsistent with those of the putative class . Therefore, he is an adequate class representative. Also, there is no dispute between the Class representative and the Class members.

The named plaintiff is well aware of his role as class representative, he understands his obligations as such, and he will sincerely protect the interests of the class as a whole.  It is also clear from the affidavits of counsel, and their conduct of this litigation to date, that counsel proposed to represent the class are experienced in class action litigation and will vigorously

-13-

prosecute this action.  Indeed, counsel have already demonstrated their vigor by successfully appealing to the 9th Circuit when faced with dismissal.

### RULE 23(B)(3) CRITERIA

**PREDOMINANCE:**

At its core, the predominance inquiry focuses on the relationship between common and individual issues.  When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. [17]As stated in the section on commonality above, in a Rule 23(b)(3) class certification, the issue of the existence of common questions is subsumed by the requirement that questions common to the class predominate over other questions. As the District Court stated in In re: Polyester Staple Antitrust Litigation:

> Although the analyses under Rule 23(a) and (b)(3) are similar, satisfaction of the predominance requirement articulated within Rule 23(b)(3) is       "more stringent" than satisfaction of Rule 23(a).  *Thorn* 445 F.3d at 319 (*quoting Lienhart v. Dryvit Sys., Inc.* 255 F.3d 138, 146 n. 4 (4th Cir. 2001)) "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem* 521 U.S. at 623.[18]

The Polyester Staple Court went on to say:

---

[17] 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* 1778 (3d ed. 2005).

[18] In re: Polyester Staple Antitrust Litigation, *supra*, at p. 12.

-14-

The purpose of Rule 23(b)(3) is to address cases "in which a class action would achieve economies of time, effort, and expense and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem* 521 U.S. at 615 (*citing* Adv. Comm. Notes, 28 U.S.C. App., p. 697). Because Rule 23(b)(3)'s focus is on the practical question of manageability, the trial court must "be granted a wide range of discretion." *Windham* 565 F.2d at 65.[19]

One of the primary purposes of a Rule 23(b)(3) certification is to provide "a single proceeding in which to determine the merits of the plaintiffs' claims, and therefore protects the defendant from inconsistent adjudications."[20]

The legal and factual issues common to the entire class that predominate are as follows:

-Whether Defendant failed to provide adequate physical security at its facility to prevent unauthorized access?

-Whether Defendant failed to store the computer containing the Plaintiff's and putative class members's personal confidential information in a properly secured area?

-Whether Defendant failed to protect and/or encrypt the Plaintiff's and putative class member's personal confidential information on its computer apparatus?

---

[19] *Id.* at p. 13.

[20] 5 Moore's Federal Practice § 23.02, (1999)

-Whether Defendant's failure to protect and/or encrypt the Plaintiff's and the putivative class members personal confidential information on its computer apparatus allowed unauthorized persons to access the information?

-Whether Defendant's failure to protect and/or encrypt the Plaintiff's and the putative class member's personal confidential information on its computer, which allowed unauthorized persons to access the information, caused harm to Plaintiff Brandt and the putative class?

-Whether Defendant owed a duty of care to Plaintiff Brandt and the putative class?

-What is the nature and scope of the duty of care owed to Plaintiff Brandt and the putative class?

-Whether the duty of care owed to Plaintiff Brandt and the putative class required that Defendant provide, among other things, credit monitoring to help victims ascertain whether unauthorized persons are using their personal information?

-Whether Defendant breached the duty of care owed to Plaintiff Brandt and the putative class?

-Whether Defendant's breach of their duty of care caused harm to Plaintiff Brandt and the putative class?

-Whether and to what extent are punitive damages warranted?

-16-

The Court may bifurcate the case into a first trial on the common issues, and the damages of the class representative.  If Defendants win on the common liability issues, the case is over, since the entire class is bound thereby.  If Plaintiff wins on one or more of the common issues, the only individual issues left to be decided in this case would be the actual quantum of damages suffered by each Plaintiff and class member.  Defendants, as they do in opposing all class certifications, will surely argue that individualized proof of damages for thousands of class members will overshadow the common issues.  However, courts usually make short shrift of this argument:

> Third, to the extent that TPCM's causation argument is that individual inquiry is necessary to establish whether the collapse of the Plan caused Plaintiffs any damages, this is precisely the same argument made by almost all defendants in mass tort cases:  determining damages will require an individualized inquiry. Courts have routinely rejected this argument, concluding, as we have in previous cases, that the need for individualized proof of damages alone will *not* defeat class certification.  *See Central Wesleyan*, 6 F.3d at 189; *Hill v. W. Elec. Co., Inc.*, 672 F.2d 381, 387 (4th Cir.1982) ("Bifurcation of ... class action proceedings for hearings on ... damages is now commonplace."); *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 566 (E.D.Va.1999) (collecting cases). As one court explained, "Quantitatively, almost by definition there will always be more individual damages issues than common liability issues.... Qualitatively, however, ... liability issues" may "far exceed in complexity the more mundane individual damages issues." *In re Honda Motor Co.*, 979 F.Supp. 365, 367 (D.Md.1997); *see also In re Amer. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir.1996) (stating that commonality test is "qualitative rather than quantitative" (citation omitted)).  So it is here.  The possibility that individualized inquiry into Plaintiffs' damages claims will be required does not defeat the class action because common issues nevertheless predominate.
>
> Moreover, the damage calculations in this case do not appear to be particularly complex, unlike the calculations in those cases in which courts have found that

numerous complicated individual damage inquiries predominated over common issues.  *Cf. Windham v. Am. Brands, Inc.*, 565 F.2d 59, 66-67, 72 (4th Cir.1977) (affirming denial of class certification because of overwhelming predominance of thousands of individualized damage questions).   In fact, Plaintiffs' claims for punitive damages do not require *any* individualized inquiry at all because this damage calculation would be based solely on *TPCM'*s conduct.[21]

None of those individual issues exist here.  This case involves negligent acts of the Defendant, resulting in a single event, which caused uniform damages to the putative class. There are no individual issues, contributory negligence, or statute of limitations.  The common issues predominate over the rather simple issue of calculating the quantum of each class member's actual damages, which may be done, in part, on a class-wide basis.  After trial on these common issues, the Court can fashion a case management plan appointing one or more special masters to quantify the actual damages suffered by each class member.

**SUPERIORITY:**

Rule 23(b)(3) identifies a non-exhaustive list of four factors for the Court to consider in determining superiority:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

©) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[21] Gunnells v. Healthplan Services, Inc. *supra*, at p. 429

-18-

(D) the likely difficulties in managing a class action.

**Class Members' interest in individual control:**

"Among the factors generally inferred to support individual litigation in such a case are a high degree of emotional involvement, extremely large damage claims, and a desire to tailor trial tactics to individual needs."[22]

Here, the actual damages suffered by the Plaintiff and the class are rather small in relation to the magnitude and expense of proving the common liability issues.

The named plaintiff has no particular emotional involvement in this litigation, other than to obtain just compensation for himself and the class. The unified nature of these claims indicate that there is no tactical advantage to be gained in prosecuting one class member's claim over another.

**Existence of other litigation:**

There is no other pending litigation known to Plaintiffs. While the existence of other lawsuits may suggest an interest in individual litigation, that is not the case here. All of the litigation is presently before this Court.

**Desirability of concentrating litigation in one forum:**

This factor is only relevant when other litigation has been commenced in other jurisdictions. Unlike a national class action in which suits may be filed in several states, this

---

[22] Newberg, *supra*, § 4:29.

-19-

case involves a discrete incident in the state of Arizona.  Although class members are likely

spread throughout the nation, the underlying negligent events all occurred in Arizona.

**Manageability:**

"The Rule lists management difficulties as a matter to be considered when comparing

the class action device to other methods of adjudicating the controversy.  It is only when such

difficulties make a class action less fair and efficient than some other method, such as

individual interventions or consolidation of individual lawsuits, that a class action is

improper."[23]  Manageability, therefore, must be examined in comparison with the alternative

methods of adjudication.  As the Court said in Pruitt v. Allied Chemical Corporation:

> The fact that the adjudication of a class action or of a series of class actions
> would be burdensome for the Court and jury does not preclude (b)(3) class
> certification, however, unless the problems of manageability in a class action are
> found to be greater than, or the same as, those found in other available methods
> of adjudicating the proposed class' claims. It is not enough simply to conclude
> that a class action or class actions would be difficult to control or conduct, else
> the Court's decision concerning class certification would be an easy one indeed.
> Instead, Rule 23(b)(3), in conjunction with subsections ©)(4) and (d), provides
> the Court flexibility to tailor class treatment of predominantly common interests
> where no better method is apparent.[24]

It is difficult to imagine that judicial efficiency, and economies of time, effort and expense will

not be achieved.  Once a class is certified, a single bifurcated trial may be conducted on all of

---

[23] Newberg *supra* § 4:32.

[24] 85 F.R.D. 100 at p. 115 (D.C.Va. 1980)

-20-

the common issues, as authorized by Rule 23(c)(4)(A) and discussed in more detail below.[25]

Judgment on the common issues will be binding on the entire class, and if favorable to the

Defendants, will end the litigation.  The actual damages of the class representative may also be

tried as a pilot case in the common issues trial, which in turn may be used as a benchmark in

subsequent determinations of class members' damages.[26]

After the common issues trial, the Court may adopt a trial plan, employing innovative

techniques to manage the resolution of the damage claims of the class:

1.  The court may replace formal discovery and strict application of the rules of evidence with

less formal, but more efficient, devices, such as court-ordered proof of claim forms in lieu of

any other discovery on the class members;[27]

2.  Pursuant to Rule 53(a)(1)(B) F.R.C.P., the Court may appoint one or more special masters

to administer the claims of the class members, take proofs of claim, evaluate the claims, and

make recommendations to the Court.

**ISSUE CERTIFICATION UNDER RULE 23(c)(4)(A):**

Closely tied to the issue of manageability in a Rule 23(b)(3) class action is Rule

23(c)(4)(A)'s provision that "an action may be brought and maintained as a class action with

---

[25] Newberg *supra* § 9:53.

[26] Newberg *supra* § 9:54.

[27] Newberg *supra* § 9:64.

-21-

respect to particular issues." This provision allows the bifurcation of common issues into a single trial, which is binding on the entire class.

In determining whether to certify issues under Rule 23(c)(4)(A), the *Manual for Complex Litigation* suggests that the Court determine whether there is a separate common issue or issues that can be certified that "will materially advance a disposition of the litgation as a whole."[28] In class action litigation, Rule 23(c)(4)(A) issue classes have been used to establish liability elements such as negligence and causation. Judges have also certified issues classes on punitive damages and class wide affirmative defenses such as state of the art. *See Manual for Complex Litigation (Fourth)* § 22.751.

### III. CONCLUSION

A class action is a procedural device used to accomplish significant judicial economies of time, effort and expense. Plaintiff brings this suit as a class action because the unified adjudication of liability, causation and damages will serve judicial efficiency, will reduce both Plaintiff's and Defendants' costs, and will give all victims their day in court, instead of only the few who may have the substantial means to finance the litigation. When compared to the alternative of thousands of individual lawsuits, class certification will achieve those goals.

---

[28] *See Manual for Complex Litigation (Fourth)* § 22.75; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 n. 12 (2nd Cir. 2001).

Efficient management of the case can be accomplished by having a common issues trial, followed by a plan for assessing the damages suffered by each class member.

The usual impediments to class certification are not present here. This case involves a single, short-term event affecting a discrete, easily identifiable number of people.

A class should be certified as defined above and all common issues should be certified for trial pursuant to Rule 23(c)(4)(A).

**RESPECTFULLY SUBMITTED** on this ___21st___ day of February, 2008.


BY:   s/M. David Karnas_____
**BELLOVIN & KARNAS, P.C.**
Barry L. Bellovin, Esq.
M. David Karnas, Esq.
Attorney for Plaintiffs


**ORIGINAL** of the foregoing filed
via CM/ECF this __21st__ day of
February, 2008, with:

United States District Court
District of Arizona - Phoenix Division
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 West Washington Street, SPC 1
Phoenix, AZ 85003-2118

**COPY** of the foregoing sent via
electronic mail this __21st__ day of
February, 2005, to:

1  The Honorable Susan R. Bolton
2  District Court of Arizona
3  Sandra Day O'Connor U.S. Courthouse, Suite 522
   401 West Washington, SPC 50
4  Phoenix, AZ 85003-2153

5
6  **COPY** of the foregoing sent via
   facsimile this __21st__ day of
7  February, 2008, to:

8
   Barry D. Halpern, Esq.
9  Andrew F. Halaby, Esq.
10 SNELL & WILMER, L.L.P.
   One Arizona Center
11 400 E. Van Buren
12 Phoenix, Arizona 85004-2202
13 FAX (602) 382-6070
   Attorneys for Defendant Triwest Healthcare Alliance
14

15

16

17  _____

18

19

20

21

22

23

24

25

26

27

28

-24-